# 13-2074-bk

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆◆

In Re: HOTI ENTERPRISES, L.P.

HOTI ENTERPRISES, L.P., HOTI REALTY MANAGEMENT CO., INC.,

*Debtors-Appellants,*

—against—

GECMC 2007-C1 BURNETT STREET, LLC,

*Creditor-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

## BRIEF FOR CREDITOR-APPELLEE
## GECMC 2007-C1 BURNETT STREET, LLC

GEORGE B. SOUTH III, ESQ.
DANIEL G. EGAN, ESQ.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

*Attorneys for Creditor-Appellee*
*GECMC 2007-C1 Burnett*
*Street, LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellee GECMC 2007 C-1 Burnett Street, LLC states that its sole member is the Trust established on behalf of the GE Commercial Mortgage Corporation Commercial Mortgage Pass-Through Certificates 2007-C1.  No publicly held corporation owns 10% or more of the stock of GECMC 2007 C-1 Burnett Street, LLC.

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ........................................................1

RESTATEMENT OF THE ISSUES ON APPEAL ..................................1

STATEMENT OF THE CASE............................................................2

STANDARD OF APPELLATE REVIEW..............................................4

STATEMENT OF THE FACTS .........................................................5

      A.    The Note and Mortgage in Favor of GECMC ...................................5

      B.    The Foreclosure Action and Appointment of the Receiver ................6

      C.    Commencement of the Chapter 11 Cases ..........................................7

      D.    The Cash Collateral Order.................................................................8

      E.    The Cash Collateral Reconsideration Motion ..................................10

      F.    The Plan and June Confirmation Hearing.........................................11

      G.    The State Court Orders.....................................................................12

      H.    The June Confirmation Hearing and Confirmation Order.................13

      I.    The Reconsideration Order ...............................................................14

      J.    The Appeal .......................................................................................15

SUMMARY OF ARGUMENT ...........................................................15

ARGUMENT ..................................................................................16

      A.    The State Court Orders Had No *Res Judicata* Effect........................16

      B.    Collateral Estoppel Does Not Apply To This Case ...........................21

      C.    The *Rooker-Feldman* Doctrine Is Inapplicable..................................22

      D.    Entry of the Confirmation Order Was
           a Proper Exercise of the Bankruptcy Court's Jurisdiction.................24

      E.    The Bankruptcy Court Did Not Abuse Its Discretion in Entering
           the Reconsideration Order................................................................26

CONCLUSION ................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allen v. McCurry*
    449 U.S. 90 (1980).................................................................16

*Burgos v. Hopkins*
    14 F.3d 787 (2d Cir. 1994) .................................................16

*Chao v. Hosp. Staffing Servs., Inc.*
    270 F.3d 374 (6th Cir. 2001) ..............................................25

*Charell v. Gonzalez (In re Gonzalez)*
    241 B.R. 67 (S.D.N.Y. 1999) .............................................16

*Citibank, N.A. v. Vebeliunas (In re Vebeliunas)*
    332 F.3d 85 (2d Cir. 2003) ...................................................4

*Cody, Inc. v. Town of Woodbury*
    179 F.3d 52 (2d Cir. 1999) ...................................................5

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*
    126 F.3d 365 (2d Cir. 1997) ...............................................17

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*
    544 U.S. 280 (2005)............................................................23

*Glendon Energy Co. v. Borough of Glendon*
    836 F. Supp. 1109 (E.D. Pa. 1993)....................................27

*In re Carlomagno Shipping, S.A.*
    185 B.R. 25 (E.D. La. 1995)...............................................25

*In re Haven Eldercare, LLC*
    Case No. 12-468-bk (2d Cir. Nov. 15, 2012) ...............19, 20

*In re Health Mgmt. Sys. Inc.*
    113 F. Supp. 2d 613 (S.D.N.Y. 2000) ...............................26

*In re Hohenberg*
    143 B.R. 480 (Bankr. W.D. Tenn. 1992).............................24

*In re Houbigant, Inc.*
914 F. Supp. 997 (S.D.N.Y. 1996) ....................................................27

*In re Hyman*
502 F.3d 61 (2d Cir. 2007) .............................................................21

*In re Motors Liquidation Co.*
436 B.R. 752 (S.D.N.Y. 2010) ....................................................26, 27

*Leather v. Eyck*
180 F.3d 420 (2d Cir. 1999) ...........................................................21

*Nemaizer v. Baker,*
793 F.2d 58 (2d Cir. 1986) ..............................................................5

*Parklane Hosiery Co. v. Shore*
439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979) .......................21

*Schiro v. Farley*
510 U.S. 222, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994) ....................21

*Stupakoff v. Otto (GMBH & Co. KG) (In re Spiegel, Inc.)*
269 F. App'x 56 (2d Cir. 2008) .........................................................5

*Swiatkowski v. Citibank*
745 F. Supp. 2d 150 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011) ...............................................................................................23

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*
956 F.2d 1245 (2d Cir. 1992) .........................................................27

**STATUTES**

11 U.S.C. § 543(d) ..........................................................................7

11 U.S.C. § 1123(a)(5) ...................................................................25

28 U.S.C. §§ 158(d)(1) and 1291 .....................................................1

28 U.S.C. §§ 1334(a) and (e) .........................................................24

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 8013 ....................................................................4

## JURISDICTIONAL STATEMENT

This appeal (the "Appeal") arises out of separate orders entered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on June 19, 2012 and July 16, 2012, respectively. Hoti Enterprises, L.P. ("Hoti Enterprises") and Hoti Realty Management Co., Inc. (together with Hoti Enterprises, the "Debtors") appealed the Bankruptcy Court's orders to the United States District Court for the Southern District of New York (the "District Court"). On April 26, 2013, the District Court entered a memorandum decision affirming the Bankruptcy Court's orders. On May 24, 2013, the Debtors appealed the District Court's memorandum decision to this Court. This Court has appellate jurisdiction over this Appeal under 28 U.S.C. §§ 158(d)(1) and 1291.

## RESTATEMENT OF THE ISSUES ON APPEAL

1.      Whether the Bankruptcy Court properly entered the order (the "Confirmation Order"), which was affirmed by the District Court, confirming the Third Modified Chapter 11 Plan of Reorganization for Hoti Enterprises L.P. and Hoti Realty Management Co., Inc. (the "Plan").

2.      Whether the Bankruptcy Court abused its discretion in entering the order (the "Reconsideration Order"), which was affirmed by the District Court, denying the Debtors' Motion for Reconsideration of Order Confirming Plan of

Reorganization, or in the Alternative, for a Stay Pending Appeal (the "<u>Reconsideration Motion</u>").

## <u>STATEMENT OF THE CASE</u>

Prior to the effective date of the Plan, Appellee GECMC 2007 C-1 Burnett Street, LLC ("<u>GECMC</u>") held a first priority lien on and security interest in substantially all of the Debtors' assets, including a residential apartment complex owned by one of the Debtors and all rents and proceeds generated therefrom. The Debtors filed for bankruptcy in October 2010. At the outset of their bankruptcy cases, the Debtors and GECMC negotiated and agreed on the terms and conditions under which cash constituting GECMC's collateral could be used during the chapter 11 cases to, among other things, maintain and operate the apartment complex and pay for the costs and expenses associated with the bankruptcy cases. This agreement was memorialized in a stipulation between the parties that was approved by the Bankruptcy Court in a Cash Collateral Order (as defined below).

In this Cash Collateral Order, the Bankruptcy Court ruled that GECMC held a valid, perfected, and enforceable first priority lien on and security interest in the Debtors' apartment complex and related property. After substantial time had passed with the Debtors making no progress in their chapter 11 cases, GECMC filed a proposed chapter 11 plan for the Debtors providing for, among other things, a transfer of the real property and related collateral to GECMC in full satisfaction

of GECMC's approximately $40 million secured claim, with GECMC agreeing to provide sufficient cash from its own funds, together with funds from the bankruptcy estate constituting its collateral, to pay in full all allowed administrative expense and priority claims against the Debtors and their estates.

The Bankruptcy Court carefully considered the chapter 11 plan and, after two separate plan confirmation hearings, entered the Confirmation Order. In doing so, the Bankruptcy Court rejected all of the Debtors' arguments, including their arguments regarding the effect of an order entered by the State Court (as defined herein). The Debtors argue that a State Court order entered on the same date as the final confirmation hearing (June 14, 2012)—and well after GECMC's secured status had already been agreed to by the Debtors and confirmed by multiple orders of the Bankruptcy Court—should have precluded the Bankruptcy Court's entry of the Confirmation Order. The Debtors' arguments are unsupported by law and are inconsistent with the Bankruptcy Court's prior rulings and the State Court decision itself.

The State Court ruling in June 2012 pertained solely to whether GECMC had standing to commence a foreclosure action in February 2009, which was more than twenty (20) months before the Debtors' bankruptcy cases were even commenced. In addition, the State Court order was entered well after the Bankruptcy Court had already ruled on the validity and enforceability of

GECMC's secured claims and liens.  Accordingly, the State Court order in no way precluded the Bankruptcy Court from entering the Confirmation Order.  The Plan recognizes GECMC's status as a secured creditor and, in accordance with applicable bankruptcy law, provides for the transfer of the property to GECMC without the need for any state law foreclosure.  The Bankruptcy Court properly entered the Confirmation Order and the District Court correctly found that the Debtors' arguments to the contrary were unfounded.

In addition, the Debtors make no argument in their brief as to why they believe the Reconsideration Order was improperly entered.  Reconsideration of an order is extraordinary relief that should be granted only in limited circumstances that are not present here.  The Debtors have not shown—and make no attempt to show—any clear error or manifest injustice that would warrant reconsideration of the Confirmation Order.  The Bankruptcy Court acted within its discretion in denying the relief requested by the Debtor, and the Bankruptcy Court's decision was correctly affirmed by the District Court.   The Confirmation Order and Reconsideration Order were proper and should not be disturbed in this Appeal.

## STANDARD OF APPELLATE REVIEW

The Bankruptcy Court's conclusions of law are reviewed *de novo* and its findings of fact are reviewed only for clear error.  *See Citibank N.A. v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003).  In addition, a motion for relief

from an order or judgment is within the discretion of the court. *See Nemaizer v. Baker*, 793 F.2d 58, 61–62 (2d Cir. 1986). Accordingly, the standard of review for the denial of a motion for reconsideration under Rule 60 of the Federal Rules of Civil Procedure (the "Federal Rules") is abuse of discretion. *See Stupakoff v. Otto (GMBH & Co. KG) (In re Spiegel, Inc.)*, 269 F. App'x 56, 57 (2d Cir. 2008) ("Review of a denial of a Rule 60(b) motion is subject to an abuse of discretion standard."); *Cody, Inc. v. Town of Woodbury*, 179 F.3d 52, 56 (2d Cir. 1999) ("We review the denial of a 60(b) motion for abuses of discretion.").

## STATEMENT OF THE FACTS

### A.    The Note and Mortgage in Favor of GECMC.

Hoti Enterprises was the prior owner of a residential apartment complex located at 2801 Fillmore Avenue, 3001 Avenue R, and 2719 Fillmore Avenue, Brooklyn, New York (the "Property"). As of the date of the Debtors' bankruptcy filing, GECMC possessed a claim against the Debtors in excess of $40 million secured by a valid, perfected, first priority security interest in all or substantially all of the Debtors' assets, including, among other things, the Property and all rents, leases, income, proceeds, and other collateral related thereto. Bk. Dkt. No. 129.[1]

---

[1]    Citations to the Appendix will be to "A-____." Citations to other District Court docket entries and Bankruptcy Court docket entries will be to "D. Dkt. No. ___" and "Bk. Dkt. No. ___," respectively.

Pursuant to an Amended, Restated and Consolidated Mortgage and Security Agreement dated February 15, 2007 (the "Mortgage"), between Hoti Enterprises and Deutsche Bank Mortgage Capital, L.L.C. ("Deutsche Bank"), Hoti Enterprises pledged the Property as collateral to secure, among other things, payments due under an Amended, Restated and Consolidated Promissory Note in the original principal amount of $31,000,000 (the "Note"). Bk. Dkt. No. 129. Hoti Enterprises also executed and delivered an Assignment of Leases and Rents dated February 15, 2007 (the "Assignment of Rents"). Bk. Dkt. No. 129. The Mortgage, Note, Assignment of Rents and other loan documents (collectively, the "Loan Documents") were thereafter assigned to U.S. Bank National Association, as successor to Wells Fargo Bank, N.A. ("Wells Fargo"), as Trustee for the Registered Holders of GE Commercial Mortgage Corporation, Commercial Mortgage Pass-Through Certificates, Series 2007-C1 (the "Trust") by assignments dated May 8, 2007. Bk. Dkt. No. 129; Bk. Dkt. No. 179 at Exs. J, K, and L. The Loan Documents were subsequently assigned to GECMC on or about February 6, 2009. Bk. Dkt. No. 129.

**B.     The Foreclosure Action and Appointment of the Receiver.**

On or around November 1, 2008, the Debtors defaulted on their obligations under the Loan Documents, and the Trust, in accordance with its rights under the Loan Documents, accelerated and declared to be immediately due and payable all

sums due to it by the Debtors. On or about February 27, 2009, GECMC commenced a foreclosure action (the "Foreclosure Action") in New York State Supreme Court, Kings County (the "State Court") with respect to the Property. By order dated March 16, 2009 in the Foreclosure Action, Barbara Odwak, Esq. was appointed as receiver to operate and manage the Property (the "Receiver").

## C.    Commencement of the Chapter 11 Cases.

On October 12, 2010, in an effort to prevent the Foreclosure Action from proceeding, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). A-1. On October 22, 2010, GECMC filed a motion in the bankruptcy cases for entry of an order, among other things, excusing compliance with section 543 of the Bankruptcy Code and allowing the Receiver to remain in possession and control of the Property (the "543 Motion").[2] Bk. Dkt. No. 10. In addition, on November 5, 2010, GECMC filed a motion in the bankruptcy cases seeking relief from the automatic stay or, alternatively, dismissal of the bankruptcy cases on the grounds that, among other things, the Debtors (i) could not fund the bankruptcy cases because they had not reached any agreement with GECMC on the use of cash collateral (*i.e.*, rents and

---

[2]    Section 543(a) and (b) of the Bankruptcy Code requires a prepetition receiver to turn over to the trustee or debtor in possession any property of the debtor that is in the receiver's possession. 11 U.S.C. § 543(a) and (b). Under section 543(d), however, a bankruptcy court can excuse compliance with this turnover requirement and allow the receiver to remain in possession of the debtor's property during the bankruptcy case. 11 U.S.C. § 543(d).

other income and proceeds generated by the Property that were subject to GECMC's liens and security interests) and (ii) had not offered GECMC any adequate protection in exchange for the use of cash collateral. Bk. Dkt. No. 24. On November 17, 2010, the Debtors filed a response to the 543 Motion in which they requested, among other things, authority to use cash collateral that was subject to GECMC's security interests and the approval of certain adequate protection to be provided to GECMC in exchange for the use of cash collateral. Bk. Dkt. No. 34.

**D.     The Cash Collateral Order.**

On December 22, 2010, the Bankruptcy Court entered an order approving a stipulation that was negotiated by and between the Debtors and GECMC authorizing the limited use of GECMC's cash collateral during the chapter 11 cases and allowing the Receiver to remain in possession and control of the Property (the "Cash Collateral Order"). Bk. Dkt. No. 43. All rents and proceeds generated from the Property were subject to GECMC's security interest and, therefore, as provided in section 363 of the Bankruptcy Code, could not be used in the chapter 11 cases without such an agreement and order.

The Cash Collateral Order set forth the terms by which GECMC would permit the rents and other income relating to the Property to be used by the Receiver to operate and maintain the Property for the benefit of the Debtors'

estates.  The Cash Collateral Order contained a standard provision providing the Debtors with a 90-day period to commence an adversary proceeding or contested matter challenging GECMC's secured claim and security interests.  Bk. Dkt. No. 43 at ¶ 7.  If the Debtors failed to do so, the Debtors, for themselves and for their estates, would be bound to an acknowledgment that:

(i)    GECMC holds a valid, first priority secured claim that is not subject to defense, counterclaim, or offset;

(ii)   the Debtors have no claims of any nature against GECMC; and

(iii)  GECMC holds a valid, binding, first priority, perfected and enforceable lien and security interest in the Property and other collateral.

Bk. Dkt. No. 43 at ¶¶ 3–5.

The Debtors did not commence any contested matter or adversary proceeding challenging GECMC's secured claim or security interests within the 90-day period provided in the Cash Collateral Order.  Therefore, in accordance with the express terms of the Cash Collateral Order, the various acknowledgements regarding the validity and enforceability of GECMC's secured claim and security interests became binding on the Debtors and their estates.  In addition, approximately one month after the Cash Collateral Order was entered, the

Bankruptcy Court entered an order lifting the automatic stay to allow GECMC to continue pursuing the Foreclosure Action (the "Lift Stay Order").  Bk. Dkt. No. 61.

## E.    The Cash Collateral Reconsideration Motion.

On March 7, 2012, more than fourteen months after entry of the Cash Collateral Order, the Debtors filed a motion for reconsideration of the Cash Collateral Order seeking, for the first time, to be relieved of certain provisions thereof (the "Cash Collateral Reconsideration Motion").  Bk. Dkt. No. 126.  At a hearing held on May 3, 2012 (the "May 3 Hearing"), the Bankruptcy Court issued a ruling denying the Cash Collateral Reconsideration Motion in its entirety.  A-5.  In its bench ruling, the Bankruptcy Court found, among other things, that the Debtors were not entitled to the relief requested in the Cash Collateral Reconsideration Motion and that the Cash Collateral Order was binding on the Debtors and their estates, and "GECMC in fact is the holder of a secured claim, the note and the mortgage."  A-5 at 19:9–11.

Moreover, the Bankruptcy Court stated as follows:  "I conclude that based upon GECMC's supplemental memorandum in which it states and attaches exhibits supporting the statement that Deutsche Bank and [GECMC] have corrected what the debtor contends was a defect in the chain of title renders the

dispute moot in any event." A-5 at 16:1–6.[3] On May 16, 2012, the Bankruptcy Court entered an order denying the Cash Collateral Reconsideration Motion (the "Cash Collateral Reconsideration Order"). Bk. Dkt. No. 210. The bench ruling was incorporated by reference into the Cash Collateral Reconsideration Order. *Id.*

## F.    The Plan and June Confirmation Hearing.

Prior to the May 3 Hearing, on December 15, 2011, GECMC filed a version of the Plan with the Bankruptcy Court providing for, among other things, (i) the turnover and transfer by the Debtors, the Receiver, and each of their related persons to GECMC of all collateral securing GECMC's claim, including the Property, in satisfaction of GECMC's allowed secured claims, and (ii) the payment of all allowed administrative and priority claims against the Debtors' estates from funds to be provided by GECMC. Bk. Dkt. No. 114.

After issuing its bench ruling at the May 3 Hearing, the Bankruptcy Court heard arguments on Plan confirmation. The Bankruptcy Court considered all of

---

[3]    In or around May 2007, Deutsche Bank executed the following three documents in connection with the assignment of the Loan Documents from Deutsche Bank to Wells Fargo: (i) an Allonge; (ii) an Assignment of Assignment of Leases and Rents; and (iii) an Assignment of Mortgage. Pursuant to separate agreements, these Loan Documents were further assigned to GECMC. Bk. Dkt. No. 179. In addition, to further demonstrate the validity of the assignment, on or about April 23, 2012, German American Capital Corporation, as successor in interest to Deutsche Bank (Bk. Dkt. No. 179 at Ex. E), executed a Confirmatory Allonge, Confirmatory Assignment of Mortgage, and Confirmatory Assignment of Assignment of Leases and Rents, confirming that the Note, Mortgage, and Assignment of Leases and Rents were properly assigned by Deutsche Bank to Wells Fargo effective in May 2007. Bk. Dkt. No. 179 at Exs. F, G, and H.

the Debtors' objections to Plan confirmation and expressly overruled them.  A-5 at

63:7–12.  The Bankruptcy Court then adjourned the hearing on confirmation of the

Plan to June 14, 2012 solely to allow GECMC to address certain issues raised by

the Internal Revenue Service (the "IRS").

## G.    The State Court Orders.

During this time, the Foreclosure Action continued to proceed in State

Court.  Ultimately, on April 4, 2012, more than fifteen (15) months after the

Bankruptcy Court entered the Cash Collateral Order, the State Court entered an

order (the "April 4 Order") dismissing the Foreclosure Action solely on the ground

that GECMC did not establish standing as of the time the Foreclosure Action was

commenced in February 2009 because GECMC was not authorized to do business

in the State of New York.  Subsequently, both Hoti and GECMC sought leave to

reargue with the State Court in connection with the April 4 Order.  On June 14,

2012, the same day as the adjourned Plan confirmation hearing and approximately

one month after the Bankruptcy Court entered the Cash Collateral Reconsideration

Order, the State Court entered an order affirming the April 4 Order (the "June 14

Order" and, together with the April 4 Order, the "State Court Orders").  In the June

14 Order, the State Court found that GECMC lacked standing for the reasons set

forth in the April 4 Order and because it did not believe GECMC established that it

held the Note and Mortgage "at the time the foreclosure proceeding was filed." Bk. Dkt. No. 246.[4]

## G.    The June Confirmation Hearing and Confirmation Order.

On June 12, 2012, GECMC filed an amended version of the Plan resolving all issues raised by the IRS at the May 3 Hearing.  Bk. Dkt. No. 227.  At the adjourned confirmation hearing on June 14, 2012 (the "June Confirmation Hearing"), the Bankruptcy Court considered confirmation of the Plan and, in doing so, considered what, if any, impact the State Court Orders had on confirmation. The Bankruptcy Court found that such orders did not affect the Plan's confirmability because the Plan was not based on GECMC completing the Foreclosure Action.  Rather, the Plan itself provided for the transfer of the Property to GECMC, which is proper under sections 1123 and 1129 of the Bankruptcy Code.  In addition, the validity, perfection, and enforceability of GECMC's liens and security interests in the Property were previously established in the Bankruptcy Court by the Cash Collateral Order and the Cash Collateral Reconsideration Order, both of which were entered well before the State Court entered the June 14 Order.

---

[4]    In their opening brief in this Appeal, the Debtors assert that "the State Court held that [GECMC] is not properly perfected notwithstanding the existence of the Cash Collateral Order."  This statement is simply false.  The State Court did not discuss the issue of perfection and never even mentioned the Cash Collateral Order in its rulings.

Accordingly, on June 19, 2012, the Bankruptcy Court entered the Confirmation Order. Bk. Dkt. No. 243. On June 29, 2012, pursuant to the Plan and Confirmation Order, the Property was transferred to GECMC, and on July 2, 2012, the Plan was substantially consummated and the Effective Date of the Plan occurred. Bk. Dkt. No. 255.

## H.    The Reconsideration Order.

On June 29, 2012, the Debtors filed a motion seeking reconsideration of the Confirmation Order (the "Reconsideration Motion") pursuant to Federal Rule 60. Bk. Dkt. No. 251. Following a hearing held on July 12, 2012, the Bankruptcy Court entered the Reconsideration Order denying the Reconsideration Motion in its entirety and, in doing so, the Bankruptcy Court properly found that:

> (i)    there was no justifiable basis for the Bankruptcy Court to reconsider its decision to enter the Confirmation Order. Bk. Dkt. No. 276;

> (ii)    the Cash Collateral Order, which establishes the validity, priority, and enforceability of GECMC's secured claims and liens, is the law of the case in the bankruptcy case and supports GECMC's rights in and to the Property; and

> (iii)    the State Court considered and ruled on a separate and distinct legal issue in the State Court Orders—namely, whether

14

GECMC had standing at the time the Foreclosure Action was commenced in February 2009.  Bk. Dkt. No. 334 at 21:23–26:20.

## I.    The Appeal.

On July 27, 2012, the Debtors filed a notice of appeal of the Confirmation Order and the Reconsideration Order to the District Court.  Bk. Dkt. No. 287.  On April 26, 2013, the District Court entered a memorandum decision (i) affirming the Confirmation Order and finding that confirmation of the Plan was appropriate, and (ii) affirming the Reconsideration Order and finding that the Bankruptcy Court did not abuse its discretion in denying the Reconsideration Motion.  D. Dkt. No. 12.  On May 24, 2013, the Debtors appealed the District Court's memorandum decision to this Court.  On August 23, 2013, the Debtors filed their opening brief in this Appeal ("Appellants' Brief").[5]

## SUMMARY OF ARGUMENT

In support of their arguments, the Debtors rely solely on misapplications of *res judicata*, collateral estoppel, and the *Rooker-Feldman* doctrine.  None of these doctrines, however, precluded the Bankruptcy Court from entering the Confirmation Order.  The Debtors ignore the sequence of events in their bankruptcy cases and the Foreclosure Action and the prior rulings entered by the

---

[5]    Citations to Appellants' Brief will be to "Appellants' Br. at ____."

Bankruptcy Court regarding the validity and enforceability of GECMC's liens and security interests.  The Debtors also ignore the limited scope of the State Court's rulings, which found only that GECMC did not have standing to commence the Foreclosure Action in February 2009.  The Confirmation Order was proper and the Debtors have presented no valid arguments suggesting otherwise.  In addition, Appellants' Brief is devoid of any arguments regarding the Reconsideration Order. Entry of the Reconsideration Order was a proper exercise of the Bankruptcy Court's discretion and the District Court correctly affirmed such order.

## <u>ARGUMENT</u>

**A.    The State Court Orders Had No *Res Judicata* Effect.**

The Debtors' arguments regarding *res judicata* are unsupported by fact or law.  *Res judicata* provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)); *see also Charell v. Gonzalez (In re Gonzalez)*, 241 B.R. 67, 72 (S.D.N.Y. 1999) ("Res judicata, or claim preclusion, operates to prevent a party from re-litigating a claim after the claim has already been decided by a court of competent jurisdiction.").  The burden is on the party seeking to invoke *res judicata* to prove that the doctrine bars the

second action.  *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997).

The State Court Orders cannot have any *res judicata* effect under the circumstances.  First, such orders addressed a legal issue separate and distinct from any issue ruled on by the Bankruptcy Court—namely, GECMC's standing to pursue foreclosure as of the time the Foreclosure Action was commenced in February 2009.  Second, the State Court Orders were entered well over a year after the Bankruptcy Court had already ruled on the validity, perfection and enforceability of GECMC's secured claims and liens.  The Cash Collateral Order was binding on the Debtors, established the law of the case in the Debtors' bankruptcy, and formed the basis for confirmation of the Plan.

The State Court Orders do not even reference the Cash Collateral Order, and the plain language of the June 14 Order contradicts the Debtors' arguments that the two courts ruled on the same issue.  Namely, in the June 14 Order, the State Court ruled only that GECMC lacked standing to commence the Foreclosure Action in February 2009 because the State Court believed that GECMC "was not the assignee of the Hoti mortgage/note <u>at the time the foreclosure proceeding was filed</u>."  Bk. Dkt. No. 246 (emphasis added).  Even the Debtors have acknowledged this aspect of the State Court's ruling in Appellants' Brief.  *See* Appellants' Br. at 11 (noting that the State Court "reach[ed] its decision that [GECMC] was not

17

properly perfected <u>at the time it commenced the foreclosure action</u>") (emphasis added).

The Bankruptcy Court previously considered and rejected the Debtors' *res judicata* arguments, finding that:

> [The Cash Collateral Order] is the law of the case in this case and I believe also *res judicata* given that it was a stipulation upon which both parties intended the agreement to be binding in respect of future litigation. That was the whole purpose of that provision covering [the] 90 days look period subject to extensions, that there would be no further challenge to their ownership of the note and the mortgage.  So I just – I don't see any applicability here of principles of federalism or *res judicata*.  If at all the applicability goes the other way . . . ."

Bk. Dkt. No. 334 at 6:14–24.  Subsequently, Judge Drain further explained his rulings as follows:

> I've considered whether, in fact, state court -- that is, Justice Lewis -- has, in fact, ruled on the *res judicata* effect of my prior orders, that is the cash collateral order from December 2010 and the June 19th confirmation order and whether I therefore am bound by her rulings. As I've laid out at length, I do not believe that is the case. She's clearly not specifically addressed the *res judicata* effect of either order.  In fact, she's not addressed at all as there was no reason for her to do, as I've already explained, the key order in this case which is the cash collateral order of December 2010.

Bk. Dkt. No. 337 at 41:3–15; *see also id.* at 14:7–12 ("GECMC could not have confirmed its plan unless they made a showing which they had done that they had a valid, binding, enforceable lien on the building").

The Debtors ignore that (a) they had already acknowledged in the Cash Collateral Order that GECMC held valid secured claims and liens and was the proper holder of the Note and Mortgage, and (b) the Bankruptcy Court ruled at the May 3 Hearing that "the creditor GECMC in fact is the holder of a secured claim, the note and the mortgage."  A-5 at 19:9–11.  Only *after* the validity, enforceability, and perfection of GECMC's secured claims and liens was firmly established and affirmed by the Bankruptcy Court did the State Court issue its ruling on the separate issue of GECMC's standing to pursue foreclosure as of February 2009.

The Debtors rely heavily upon *In re Haven Eldercare, LLC*, Case No. 12-468-bk (2d Cir. Nov. 15, 2012), a summary order with no precedential effect. *Haven Eldercare*, however, is inapposite as it addressed an entirely different situation.  In *Haven Eldercare*, an appellee obtained a state court judgment against the appellant for a small sum of money.  After the state court judgment was entered, the appellant filed a motion in federal bankruptcy court asking it to rule that the appellant did not have any liability to the appellee, notwithstanding the state court judgment.  The bankruptcy court and the appellate courts found that

principles of *res judicata* applied and precluded the appellant from re-litigating its liability on the judgment in federal court. In *Haven Eldercare*, the issues raised in state court and the federal court motion were identical—whether appellant was liable to appellee on a particular claim. In addition, the state court judgment was entered first, with the appellant subsequently going into federal court to seek review of the state court judgment.

The facts here are readily distinguishable. Separate and distinct legal issues were addressed in the bankruptcy cases and the Foreclosure Action. The Bankruptcy Court entered the Confirmation Order providing for the transfer of the Property to GECMC, and the Confirmation Order was based on prior orders of the Bankruptcy Court finding that GECMC had valid and enforceable secured claims and liens against the Debtors and the Property. The State Court, on the other hand, entered an order finding only that GECMC did not have standing to pursue the Foreclosure Action at the time it was commenced in February 2009. In addition, the State Court Orders came after the Bankruptcy Court's orders on the validity and enforceability of GECMC's secured claims and liens. *Res judicata* does not apply under these circumstances to preclude the Bankruptcy Court from entering the Confirmation Order. As noted by the Bankruptcy Court, if anything, *res judicata* goes the other way (*i.e.*, *res judicata* prevented the State Court from

issuing the State Court Orders <u>after</u> the Bankruptcy Court issued the Cash Collateral Order). *See* Bk. Dkt. No. 334 at 6:14–24.

## B.    Collateral Estoppel Does Not Apply To This Case.

The Debtors also argue, without any case law support, that collateral estoppel applies to bar entry of the Confirmation Order. This argument fails for similar reasons. Collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck,* 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley,* 510 U.S. 222, 232, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979).

"Under New York law, collateral estoppel bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *In re Hyman,* 502 F.3d 61, 65 (2d Cir. 2007) (citations omitted).

As discussed above, (i) the State Court Orders addressed separate and distinct legal issues from the Confirmation Order, (ii) the Foreclosure Action was not a prior action but rather was an action occurring simultaneously with the chapter 11 cases, (iii) the Confirmation Order was based on prior orders and findings of the Bankruptcy Court that GECMC held valid, perfected, and enforceable secured claims and liens, and (iv) GECMC did not seek to challenge in Bankruptcy Court the State Court's findings that GECMC did not have standing to commence the Foreclosure Action in February 2009.   Accordingly, collateral estoppel is inapplicable to this case.

## C.    The *Rooker-Feldman* Doctrine Is Inapplicable.

The Debtors appear to have backed off their *Rooker-Feldman* argument to an extent in this Appeal, as they now only make the bare assertion—without proffering any legal argument on the issue and without citing any case law in support—that the *Rooker-Feldman* doctrine "possibly" precluded GECMC from asserting its rights as a mortgagee in Bankruptcy Court.  *See* Appellants' Br. at 13. The Debtors are simply wrong.

The *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those

judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Moreover, "[w]hen there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court." *Id.* at 292. Therefore, for the *Rooker-Feldman* doctrine to apply, (i) the party bringing the federal action must have first lost in state court, (ii) that party's injury must be caused by the state court judgment, (iii) district court review of the state court judgment must be requested, and (iv) the state court decision must be rendered prior to the commencement of the federal court proceeding. *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 164 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011). None of these requirements is present here.

The procedural histories of both the Foreclosure Action and the Debtors' bankruptcy cases make clear that the *Rooker-Feldman* doctrine does not apply. GECMC filed the Foreclosure Action in February 2009 and, in October 2010, the Debtors filed their chapter 11 petitions in the Bankruptcy Court. In December 2010—prior to any ruling in the State Court on the Foreclosure Action—the Bankruptcy Court entered the Cash Collateral Order determining that GECMC was the proper holder of the Note and Mortgage and held valid, perfected, and enforceable secured claims and liens. The Bankruptcy Court affirmed this decision in a bench ruling at the May 3 Hearing and in the Cash Collateral Reconsideration Order. Only after these Bankruptcy Court rulings were made, and after the

23

Bankruptcy Court had overruled all of the Debtors' objections to the Plan, did the State Court enter an order on a separate legal issue, finding that GECMC lacked standing to pursue the Foreclosure Action because it did not establish that it held the Note and Mortgage "at the time the foreclosure proceeding was filed."

The two actions were being conducted concurrently and the Bankruptcy Court's rulings with respect to the transfer of the Property under the Plan were based on prior orders it had entered. GECMC did not commence any action in federal court seeking a review of the State Court Orders. Rather, the Foreclosure Action and the Debtors' bankruptcy cases had been proceeding on parallel tracks since October 2010. There is simply no authority that supports the application of the *Rooker-Feldman* doctrine under these circumstances.

**D.    Entry of the Confirmation Order Was
a Proper Exercise of the Bankruptcy Court's Jurisdiction.**

The Debtors also appear to argue that by entering the Lift Stay Order, the Bankruptcy Court somehow lost jurisdiction to make a ruling regarding the Property. *See* Appellants' Br. at 7. This is simply untrue and is based on a fundamental misunderstanding of bankruptcy law and procedure. Bankruptcy courts have original and exclusive jurisdiction over all bankruptcy cases and property of a debtor's bankruptcy estate. *See* 28 U.S.C. §§ 1334(a) and (e); *In re Hohenberg*, 143 B.R. 480, 484 (Bankr. W.D. Tenn. 1992) ("where property of the bankruptcy estate is involved, the bankruptcy court has exclusive jurisdiction.").

24

A bankruptcy court may, however, share jurisdiction with a federal or state court by, among other things, lifting the automatic stay; however, an order lifting the automatic stay does not divest the bankruptcy court of jurisdiction over the property at issue. *See Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 383–84 (6th Cir. 2001) ("And if the bankruptcy court grants relief from the stay with respect to certain property or claims, . . . the bankruptcy court retains jurisdiction over those matters . . . ."); *In re Carlomagno Shipping, S.A.*, 185 B.R. 25, 26 (E.D. La. 1995) (stating that "the mere lifting of the stay did not divest that court of jurisdiction over the [asset], which was property of the estate"). Instead, lifting the stay provides another court with concurrent jurisdiction. *See Chao*, 270 F.3d at 383 (lifting the automatic stay leaves the bankruptcy with "jurisdiction [that] is concurrent with that of other courts of competent jurisdiction.").

Therefore, even though the Bankruptcy Court entered the Lift Stay Order, it still retained jurisdiction over the Property and was free to enter orders regarding the Property and/or the disposition thereof, including the Cash Collateral Order and the Confirmation Order. Indeed, the Bankruptcy Code expressly permits the transfer of a debtor's property through a chapter 11 plan without the need for the exercise of state law foreclosure or other remedies by a creditor. *See* 11 U.S.C. § 1123(a)(5) ("Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall . . . provide adequate means for the plan's implementation, such as . . .

transfer of all or any part of the property of the estate to one or more entities . . . .").    The Bankruptcy Court had jurisdiction over the Property and properly exercised its authority to approve the transfer of the Property to GECMC through the Plan, notwithstanding the status of the Foreclosure Action.

### E.    The Bankruptcy Court Did Not Abuse Its Discretion in Entering the Reconsideration Order.

The Debtors fail to make any argument regarding whether the Bankruptcy Court abused its discretion in entering the Reconsideration Order.    The record reflects that entry of the Reconsideration Order was well-within the Bankruptcy Court's discretion.    The Bankruptcy Court carefully considered the issues, arguments, and record before it in connection with the Reconsideration Motion and determined that the Debtors had not demonstrated any entitlement under applicable law to the relief requested therein.    Therefore, there is no basis to disturb the Reconsideration Order on appeal.

It is well-established that "[r]econsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"    *In re Motors Liquidation Co.*, 436 B.R. 752, 753 (S.D.N.Y. 2010) (quoting *In re Health Mgmt. Sys. Inc.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).    The major grounds justifying reconsideration are "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."    *In re Motors*

*Liquidation*, 436 B.R. at 753–54 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

The Bankruptcy Court carefully considered the record before it and all of the Debtors' arguments with respect to Plan confirmation, including whether the State Court Orders had any impact on confirmation, and determined that the Plan was confirmable under the Bankruptcy Code. Subsequently, in connection with the Reconsideration Motion, the Bankruptcy Court properly determined that there was no change in controlling law, no newly available evidence, no clear error or manifest injustice, and no other basis to reconsider the Confirmation Order. The Debtors simply wanted another bite at the apple, which is an inappropriate use for reconsideration motions. *See In re Houbigant, Inc.*, 914 F. Supp. 997, 1001 (S.D.N.Y. 1996) (a litigant may not use a motion for reconsideration to reargue "those issues already considered when a party does not like the way the original motion was resolved"); *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) ("It is improper on a motion for reconsideration to 'ask the Court to rethink what [it] had already thought through—rightly or wrongly'").

The Bankruptcy Court's entry of the Reconsideration Order was a sound exercise of its discretion and the Debtors have not made any arguments demonstrating otherwise.

## <u>CONCLUSION</u>

For the foregoing reasons, GECMC respectfully requests that the Court affirm the Confirmation Order and Reconsideration Order in all respects and grant such other and further relief as it deems just and proper.

Dated:  November 22, 2013
      New York, New York

                                        **DLA PIPER LLP (US)**

                                        <u>/s/ George B. South III</u>
                                        George B. South III
                                        Daniel G. Egan
                                        1251 Avenue of the Americas
                                        New York, New York 10020-1104
                                        Tel:  (212) 335-4500
                                        Fax:  (212) 335-4501

                                        *Counsel for Appellee GECMC 2007 C-1*
                                        *Burnett Street, LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure ("FRAP") because it contains 6,471 words, excluding the parts of the brief exempted by FRAP 32(a)(7)(B)(iii). This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in Times New Roman 14-point font.

Dated:  November 22, 2013
        New York, New York

**DLA PIPER LLP (US)**

/s/ George B. South III
George B. South III
Daniel G. Egan
1251 Avenue of the Americas
New York, New York 10020-1104
Tel:  (212) 335-4500
Fax:  (212) 335-4501

*Counsel for Appellee GECMC 2007 C-1
Burnett Street, LLC*